UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AALIJAH W.,[1]
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:23-cv-1955
Watson, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff Aalijah W. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for child's disability benefits (CDB) and supplemental security

income (SSI).[2]  This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the

Commissioner's response (Doc. 9) and plaintiff's reply (Doc. 10).

## I. Procedural Background

This is plaintiff's second case before this Court.  Plaintiff protectively filed applications

for CDB and SSI in March 2019.  (Tr. 204-13).  Plaintiff alleged that she was disabled beginning

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] As explained in *Tarlano v. Comm'r of Soc. Sec.*, No. 3:19-cv-71, 2020 WL 467711 (S.D. Ohio Jan. 29, 2020) (report and recommendation), *adopted*, 2020 WL 1165688 (S.D. Ohio Mar. 11, 2020):

"Disability for purposes of [CDB] benefits is defined by statute using the same language used to define 'disability' for [Disability Insurance Benefits] and SSI eligibility . . . [w]hen making a disability determination related to a child's disability benefits application, the Commissioner applies the same five-step sequential process used to make disability determinations related to DIB and SSI applications."  *Welch v. Colvin*, No. 3:12-cv-654-CAN, 2014 WL 4261244, at *3 (N.D. Ind. Aug. 28, 2014).  Citations in this Report and Recommendation to SSI regulations are made with full knowledge of the corresponding CDB regulations, and *vice versa*.

*Id.* at *1 n.2.

February 16, 2014 due to bipolar disorder, depression, anxiety, epilepsy, and stomach problems. (Tr. 330). Her applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* telephone hearing before administrative law judge Michael Pendola (ALJ Pendola). Plaintiff, plaintiff's mother, and a vocational expert (VE) appeared and testified at ALJ Pendola's hearing on July 14, 2020. (Tr. 30-75). On October 2, 2020, ALJ Pendola issued a decision denying plaintiff's CDB and SSI applications. (Tr. 8-29). On March 23, 2021, the Appeals Council denied plaintiff's request for review, making ALJ Pendola's decision the final decision of the Commissioner. (Tr. 1-5).

After an appeal to this Court, the parties stipulated to a remand to the Commissioner for further proceedings pursuant to Sentence Four of § 205 of the Social Security Act, 42 U.S.C. § 405(g). *See Aalijah W. v. Comm'r of Soc. Sec.*, No. 2:21-cv-2744 (S.D. Ohio). (Tr. 1715-1728). On January 9, 2023, ALJ Kimberly Cromer (ALJ Cromer) held a telephone hearing with plaintiff and VE Hermona Robinson (VE Robinson) appearing and testifying. (Tr. 1652-1687). On April 11, 2023, ALJ Cromer denied plaintiff's CDB and SSI applications. (Tr. 1622-1644). Plaintiff did not request review by the Appeals Council, instead opting to file suit with this Court.

## II. Analysis

### A. Legal Framework for Disability Determinations

Child's benefits based on disability are provided for under 42 U.S.C. § 402(d). A claimant may be entitled to CDB if she is at least 18 years old and has a disability that began before she turned 22 years old. 20 C.F.R. § 404.350(a)(5). *See also Miller v. Shalala*, 859 F. Supp. 297, 298 (S.D. Ohio 1994) (quoting 42 U.S.C. § 402(d)(1)(B)(ii)) (a requirement for CDB

is that the claimant be "under a disability . . . which began before he attained the age of 22. . . ."). To qualify for CDB, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To establish eligibility for CDB, the claimant must show: (1) that she "was disabled on or before [her] birthday (here, the twenty-second birthday); and (2) that such disability continue[d] to the date of the application." *Miller*, 859 F. Supp. at 300 (citing *Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973)). *See also Baker v. Barnhart*, 101 F. App'x 992, 993 (6th Cir. 2004) (citing 42 U.S.C. § 402(d)(1); *Futernick,* 484 F.2d at 648) ("To satisfy the requirements of child insurance benefits, [the claimant] must establish that she was disabled as a child or that she is disabled as an adult and that she was continuously disabled from the date of her twenty-second birthday . . . through the date that she applied for benefits."); *Reyes v. Sec'y of Health, Ed. & Welfare*, 476 F.2d 910, 915 n.5 (D.C. Cir. 1973) (citing S. Rep. No. 2133, 84th Cong., 2d Sess. 2, 5-6 (1956), U.S. Code Cong. & Admin. News 1956, p. 3877; H.R. Rep. No. 1189, 84th Cong., 2d Sess. 2 (1955)) (noting legislative history of § 202(d)(1)(B)(ii), indicating that "the intent of Congress was to provide benefits for children who were permanently disabled prior to age 18 [now 22] and have remained so continuously to the present time."). "Proof that [a claimant] has engaged in

'substantial gainful activity' at any point during the relevant time period would demonstrate that his disability has not been continuous, at least for the purposes of retroactive child disability benefits." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (citing *Futernick*, 484 F.2d at 648). *See also Baker*, 101 F. App'x at 993 ("[A] child who performs substantial gainful activity after age twenty-two is not entitled to child's insurance benefits.").

### B.  The Administrative Law Judge's Findings

ALJ Cromer applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. Born [in] . . . 1999, [plaintiff] had not attained age 22 as of February 16, 2014, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. [Plaintiff] has not engaged in substantial gainful activity since February 16, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: seizure disorder; major depressive disorder; bipolar disorder; generalized anxiety disorder; and cannabis dependence (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing of ladders, ropes, or scaffolds; no commercial driving; no concentrated exposure to extreme cold, heat, humidity, wetness, or pulmonary irritants; no concentrated exposure to vibration; and no concentrated exposure to loud construction type noise as defined in the DOT/SCO, or concentrated exposure to flashing, strobing, concert type lighting. Mentally, she is limited to simple, routine work; no work or social interaction or communication with the general public as part of routine job duties; occasional interaction with coworkers and supervisors; no tandem work with coworkers; no fast-paced production such as assembly line work or work where a

machine sets the pace, but rather work is of a variable rate; occasional decision making; occasional changes in the work setting; and no strict production hourly requirements, but rather end of day work goals.

6. [Plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

7. [Plaintiff] was born [in] . . . 1999, and was 14 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because [plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from February 16, 2014, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

(Tr. 1629-1644).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[3] The ALJ relied on VE Robinson's testimony to find that plaintiff would be able to perform the requirements of representative medium, unskilled occupations, such as packager (100,000 jobs in the national economy) and inspector (100,000 jobs in the national economy). (Tr. 1643, 1677). VE Robinson also identified representative light, unskilled occupations that plaintiff could perform, such as garment sorter (120,000 jobs in the national economy) and packager (250,000 jobs in the national economy); and unskilled, sedentary occupations that plaintiff could perform, such as sorter (100,000 jobs in the national economy) and table worker (100,000 jobs in the national economy). (*Id.*).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D.  Specific Errors

In plaintiff's first assignment of error, she argues that ALJ Cromer's residual functional capacity (RFC) determination was not supported by substantial evidence as it relates to the state agency psychological consultants' medical opinions.[4]  Specifically, plaintiff argues that ALJ Cromer omitted the state agency psychological consultants' persuasive opinions that plaintiff be

---

[4] Plaintiff's first assignment of error pertains only to the ALJ's mental RFC determination.  Any argument related to the ALJ's physical RFC determination is deemed waived.  *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it legally or factually in the Statement of Errors") (report and recommendation), *adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).

limited to superficial social interaction with coworkers and supervisors without adequate explanation.  In plaintiff's second assignment of error, she argues that ALJ Cromer's decision at step five of the sequential evaluation process was not based on substantial evidence because it relied on VE testimony that was inconsistent with Bureau of Labor Statistics (BLS) data.

### 1.  RFC: superficial interactions

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  A claimant's RFC assessment must be based on all the relevant evidence in her case file.  (*Id*.).  The governing regulations[5] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. § 404.1513(a)(1)-(5).  With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources."  20 C.F.R. § 404.1520c(a).

The ALJ is charged with the final responsibility of determining a claimant's RFC.  *See* 20 C.F.R. § 404.1546(c).  The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  *See also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the

---

[5] Plaintiff's applications were filed after March 27, 2017.  Therefore, they are governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

evidence in the record."); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)).

Plaintiff notes that both state agency psychological consultants, Richard J. Hamersma, Ph.D., and Jaime Lai, Psy.D., opined that she would be limited to superficial interactions with familiar coworkers and supervisors; and ALJ Cromer found these opinions "persuasive overall, while adjusting some of the language therein to remain compliant with the Act." (Doc. 8 at PAGEID 2439, quoting Tr. 1642). Plaintiff argues that in her RFC determination, however, ALJ Cromer omitted their limitation to superficial interactions with coworkers and supervisors without adequate explanation. Plaintiff argues that this error is compounded by the fact that the parties acknowledged the same error in ALJ Pendola's decision—paving the way for the prior remand. (*See* Tr. 1717-26). Plaintiff also points to an Appeals Council's decision in an unrelated case, in which it explained that "occasional" refers to the frequency of social interaction and "superficial" refers to its depth or quality.

In response, the Commissioner argues that ALJ Cromer accounted for the opined social interaction limitations to a significant extent by restricting plaintiff to "no work or social interaction or communication with the general public as part of routine job duties; occasional interaction with coworkers and supervisors; and no tandem work with coworkers." (Doc. 9 at PAGEID 2461, referring to Tr. 1641). According to the Commissioner, the ALJ provided an adequate explanation of why she was not including more extreme limitations in her RFC finding. In particular, the Commissioner argues that ALJ Cromer's limitation to "no tandem work with coworkers" (and similar language) has been found to reflect a qualitative as opposed to a merely

quantitative limitation on interaction with others by this Court and others within the Sixth

Circuit.  The Commissioner also argues that ALJ Cromer was within her authority to define

"superficial" in vocationally relevant terms.  Finally, the Commissioner argues that the Appeals

Council's decision in an unrelated case is neither binding nor inconsistent with ALJ Cromer's

vocational translation of the term "superficial" here.

In reply, plaintiff admits that ALJ Cromer partially explained how she incorporated the

"superficial" limitation into her RFC determination by restricting plaintiff from tandem work.

But plaintiff argues here, for the first time, that the ALJ erred because this qualitative limitation

accounted only for the state agency psychological consultants' opinions related to interaction

with coworkers but not supervisors.

As an initial matter, the Court notes that ALJ Cromer was "not required to recite the

medical opinion of a physician verbatim in h[er] residual functional capacity finding."  *Poe v.

Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).  This is so even where an opinion is

assigned significant weight.  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir.

2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that

an ALJ adopt a state agency psychologist's opinions verbatim" or "limitations wholesale.").

The Court is also unpersuaded by the decision of the Appeals Council in a different case.

Even to the extent that the referenced decision was relevant to the outcome here,[6] the

undersigned has already rejected the argument that such a decision is binding.  *Markcus C. v.

Comm'r of Soc. Sec.*, No. 2:22-cv-1917, 2023 WL 1783514, at *1 (S.D. Ohio Feb. 6, 2023)

---

[6] The decision plaintiff references (*see* Doc. 8-1 at PAGEID 2452-53) highlights a distinction between quantitative limitations (e.g., "occasional") and qualitative limitations (e.g., "superficial") on interactions.  For the reasons explained below, ALJ Cromer made such a distinction with the limitations used in her decision.

9

("[P]aintiff contends [that] this matter must be remanded so that the ALJ can reevaluate plaintiff's claimed disability using the 'superficial interaction' definition the Appeals Council employed in the unrelated case.  The Court disagrees.") (report and recommendation), *adopted*, 2023 WL 2162261 (S.D. Ohio Feb. 22, 2023).

Turning to the opinions at issue, the state agency psychological consultants found that plaintiff was moderately limited in her ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors.  (Tr. 98, 115). They found that plaintiff was not significantly limited in her ability to ask simple questions or request assistance, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, or to maintain socially appropriate behavior.  (*Id.*).  They narratively opined that plaintiff was "capable of superficial social interaction with familiar coworkers and supervisors."  (Tr. 98, 116).

ALJ Cromer found the state agency psychological consultants' opinions "persuasive overall" (Tr. 1642), but she included the following explanation—specifically referencing her instructions from the Appeals Council on remand:

> The Appeals Council indicated that the prior ALJ decision did not explain a discrepancy from the social interaction limitations of the [prior administrative mental findings] indicating that [plaintiff] was capable of superficial social interactions with familiar coworkers and supervisors and she should avoid contact with the general public and would work best in a solitary setting) (Ex. 15A).  Here, the undersigned has considered the entirety of the record, accounted for [plaintiff]'s social interaction limitations, and finds [plaintiff] limited to no work or social interaction or communication with the general public as part of routine job duties; occasional interaction with coworkers and supervisors; and no tandem work with coworkers.  There is a lack of support in the medical evidence of record for any more extreme social limitations.  Indeed, [plaintiff] engages in treatment with treating sources, the record does not document agoraphobia, and medication

management with Depakote has been largely consistent. To the extent [plaintiff] does not like being around others, social interaction limitations have been placed. The undersigned finds the limitations in the RFC above best account for [plaintiff]'s difficulty managing her mood and her irritability with others as detailed above, while noting that no social interaction with the general public is appropriate.

(Tr. 1641).

The Court finds that ALJ's decision accounted for the state agency psychological consultants' limitation to superficial interaction with coworkers, supervisors, and the general public by translating it into vocationally relevant terms consistent with the record as a whole. Those terms ("no tandem work with coworkers" (Tr. 1632)) reflect qualitative restrictions consistent with the record as discussed by the ALJ elsewhere in her opinion. When discussing the mental functioning areas, the ALJ found plaintiff only moderately limited in the area of interacting with others—noting:

> [Plaintiff] alleged that she has difficulty engaging in social activities and getting along with others. She reported she tends to be irritable. However, according to her statements, [plaintiff] is also able to get along with others, shop, spend time with friends and family, and live with others ([Tr. 355-62 (Function Report)] and Hearing Testimony). She has been able to have romantic relationships, though the record does show some altercations with boyfriends in the past. Finally, the medical evidence shows that the claimant had a good rapport with providers and was described as pleasant and cooperative during several office visits.

(Tr. 1631). When discussing plaintiff's mental health impairments, the ALJ noted:

> Despite having anxiety and depression, she reported doing "good" and feeling better when she took her medication and having suicidal thoughts only occasionally when not taking her medication regularly. The record also shows notable marked improvement in her functioning, behavior, mood, and hygiene in October 2020, which she attributed to a change in medication [Tr. 2189]. Notably too, several mental status examinations in the more recent record show normal mental functioning.

11

(Tr. 1633).  (*See* Tr. 2189, New Horizons Mental Health Services ("Ct notes a marked improvement in her functioning, and attributes this to her change in medications.  Ct reports that she deeply regrets her previous behavior, and recognizes that her moods and irritability was from her previously inappropriate overmedication.  Ct reports that she still has a number of stressors that have remained the same, yet her improved fx is evident despite these stressors.")).

ALJ Cromer then highlighted more recent New Horizons records showing plaintiff's reported good mental condition with medication, okay mood, good sleep, and normal mental status examination in early 2022.  (Tr. 1638, referring to Tr. 2116-49 (2022 records showing plaintiff's reports of "doing good" and "stable" with "ok" mood (*see* Tr. 2116, 2129, 2141)); and Tr. 1639, referring to Tr. 2166 (December 2022 note showing plaintiff's report of effective medication treatment without side effects and good mood)).  *Cf. Collins v. Comm'r of Soc. Sec.*, No. 3:17-cv-2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018) (the ALJ's consideration of the plaintiff's social abilities earlier in her decision provided substantial evidence for her ultimate decision to omit a superficial interaction limitation and instead include a limitation against team or tandem tasks) (report and recommendation), *adopted*, 2019 WL 1409535 (N.D. Ohio Mar. 28, 2019).

ALJ Cromer's "no tandem work with coworkers" qualification is also consistent with the state agency psychological consultants' own relatively minor social interaction limitation ratings (*see* Tr. 98, 115-16).  *See Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-cv-2370, 2022 WL 721455, at *16 (N.D. Ohio Jan. 13, 2022) (quoting *Modro v. Comm'r of Soc. Sec.*, No. 2:18-cv-900, 2019 WL 1986522, at *7 (S.D. Ohio May 6, 2019) ("[I]t may fall to the ALJ to 'convert[ ] and

12

incorporate[ ]' the limitations set forth in a medical opinion 'into vocationally relevant terms' –
i.e., terms that are relevant and meaningful in the DOT / SCO and/or the VE's own vocational
experience – before including those limitations in a hypothetical posed to a VE.") (latter two
alterations in original) (report and recommendation), *adopted*, 2022 WL 716105 (N.D. Ohio
Mar. 10, 2022).

      Several courts within the Sixth Circuit have found that the same or similar vocational
terms account for the qualitative connotation of the term "superficial." *See Kelsey v. Comm'r of
Soc. Sec.*, No. 1:22-cv-280, 2022 WL 18358921, at *6 (W.D. Mich. Dec. 29, 2022) (restricting
the plaintiff "to no interaction with the public, occasional interaction with supervisors and
coworkers, and no tandem or cooperative tasks" represented "significant limitations . . . on the
quality of the interaction, essentially amount[ing] to no more than superficial contact with
supervisors and coworkers") (report and recommendation), *adopted*, 2023 WL 246884 (W.D.
Mich. Jan. 18, 2023); *Stamper v. Comm'r of Soc. Sec.*, No. 1:20-cv-467, 2021 WL 5577405, at
*14 (S.D. Ohio Nov. 30, 2021) ("Given [the ALJ's thorough review of medical records reflecting
generally normal mental health findings] and the fact that the ALJ included limitations on the
nature/quality (as opposed to only the frequency) of interactions, the Court finds that the ALJ's
mental RFC determination took the state agency psychologists' opinions regarding "superficial"
interactions into account and was based on substantial evidence.") (report and recommendation),
*adopted sub nom. Stamper v. Kijakazi*, 2022 WL 1183234 (S.D. Ohio Apr. 21, 2022); *Dickinson
v. Comm'r of Soc. Sec.*, No. 2:19-cv-3670, 2020 WL 4333296, at *12 (S.D. Ohio July 28, 2020)
("The Court agrees that the limitation to no tandem tasks is a qualitative limitation on social

interaction.  As such, this limitation adequately addressed the opinion of [the state agency

consultants] that Plaintiff be limited to superficial interaction with others.") (report and

recommendation), *adopted*, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020);  *Kearns v. Comm'r of

Soc. Sec.*, No. 3:19-cv-1243, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020) ("[T]he ALJ's

limitation to no team or tandem tasks is a qualitative limitation on social interaction and

adequately addressed the opinion of [the state agency consultants] that Kearns be limited to

superficial interaction with others.") (report and recommendation), *adopted*, 2020 WL 2839654

(N.D. Ohio June 1, 2020); *Collins*, 2018 WL 7079486, at *6 ("[T]he ALJ restricted Plaintiff

from "team or tandem tasks" (Tr. 15), which logically require more than superficial interpersonal

contact.  This is a restriction on the quality of interpersonal contact.").  Based on the foregoing,

the ALJ properly converted the superficial-interaction limitation into relevant vocational terms

for incorporation into the RFC, and the ALJ's assessment of plaintiff's RFC is based on

substantial evidence.

Plaintiff's final argument, that the ALJ's RFC determination does not take into account a

qualitative limitation on plaintiff's interaction with *supervisors* in particular, is not well-taken.

The argument was raised for the first time in plaintiff's reply memorandum and was not in

response to the Commissioner's arguments.  *See Fagin ex rel. B.P. v. Comm'r of Soc. Sec.*, No.

1:10-cv-813, 2012 WL 213801, at *11 n.1 (S.D. Ohio Jan. 24, 2012) (report and

recommendation), *adopted sub nom. Fagin v. Comm'r of Soc. Sec.*, 2012 WL 481787 (S.D. Ohio

Feb. 14, 2012) (holding that a moving party may not raise new issues for the first time in its

reply brief).  "[A]s a matter of litigation fairness and procedure," the Court declines to address this argument.  *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 578 (E.D. Tenn. 2012).

For the foregoing reasons, ALJ Cromer's decision with respect to the state agency psychological consultants' opinions was based on substantial evidence.  This assignment of error should be overruled.

### 2. VE Robinson's testimony

At step five of the sequential evaluation process, the burden shifts to the Commissioner to demonstrate that a claimant can perform work that is available in the national economy.  *Rabbers*, 582 F.3d at 652.  To meet this burden, "the Commissioner must make a finding 'supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs.'"  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987)).

Plaintiff argues that ALJ Cromer erred by overruling plaintiff's post-hearing objection regarding VE Robinson's testimony.  (*See* Tr. 1812-91).  Plaintiff argues that this objection presented data directly from the Bureau of Labor Statistics (BLS) that contradicted VE Robinson's testimony.  Plaintiff further argues that she presented her objection prior to the issuance of ALJ Cromer's decision and had no obligation to present it at or prior to the hearing, since she could not reasonably have been expected to anticipate VE Robinson's testimony. Plaintiff argues that "[t]he issue here is not with the job numbers themselves; rather, the issue . . . is with how the ALJ handled a conflict with the job numbers between the claimant and the vocational witness.  When such a conflict exists, the ALJ must resolve the conflict before relying

on the vocational witness' testimony. . . ."  (Doc. 8 at PAGEID 2447).  Plaintiff argues that ALJ Cromer overruled plaintiff's objection without resolving a conflict.

The Commissioner argues in response that plaintiff waived the opportunity to object to VE Robinson's testimony by failing to raise an objection at the time of the administrative hearing.  The Commissioner also argues that a pre-hearing letter from plaintiff, which indicated that she "may submit a brief" post-hearing after comparing the vocational testimony with "the DOT, the SCO and the Revised Handbook for Analyzing Jobs" and "O*Net, County Business Patterns, Occupational Outlook Handbook, etc." (Tr. 1807), does not change the result.  The Commissioner points to authority from this Court and others within the Sixth Circuit finding waiver under similar circumstances, which plaintiff does not rebut.  Even if plaintiff did not waive her objections to VE Robinson's testimony, the Commissioner argues that ALJ Cromer explained why she was unpersuaded by plaintiff's post-hearing objection and properly relied on VE Robinson's testimony as substantial evidence supporting her decision at step five of the sequential evaluation process.  The Commissioner argues that neither plaintiff nor her counsel have the requisite expertise or knowledge to refute VE Robinson's testimony.

On December 21, 2022, prior to ALJ Cromer's hearing, plaintiff's counsel wrote in a letter to the agency:

> Since we do not know what the vocational witness will say at the hearing, we will need to compare that testimony to the DOT, the SCO and Revised Handbook for Analyzing Jobs.  These three treatises contain in excess of a combined 2,300 pages of information about thousands of occupations.  The witness may also rely on other treatises . . . or other material such as BLS data. . . .  Such sources are neither currently identifiable nor in the current record.  . . .  Accordingly, we may submit a brief or comments after the hearing. . . .

16

(Tr. 1807).

At the administrative hearing on January 9, 2023, ALJ Cromer posed the following

hypothetical to VE Robinson:

> We are going to preclude no commercial driving as part of any routine job duties.
> Any potential for triggering situation, avoid  concentrated exposures to cold, heat,
> humidity, wetness, pulmonary irritants.  We're also going to avoid concentrated
> exposure to any vibration.  Avoid any concentrated exposure to loud noise,
> construction level noise as defined under the DOT or the SCO.  Also, adding avoid
> flashing, [strobing] light that you might see at a concert.  I would like to additionally
> contemplate the mental aspects of this case.
>
> Taking into account B criteria across the board at a moderate level for this first
> hypothetical question.  We'll look at those translating for simple, routine work.
> Now, we've heard a little bit with that brief, superficial context.  Again, I'm going
> to translate that a little bit different way as I find that language to be a little too
> vague for working terms.  I'd like to try to utilize more Dictionary of Occupational
> Titles terms if we can.  I'd like to look at no tandem work with coworkers.  No
> tandem work with jobs tasks with coworkers.  No work or requirement for social
> interaction or communication with the general public as part of any routine job
> duties.  Only occasional, using that DOT definition of up to one-third of an eight-
> hour workday interaction with coworkers and supervisors.  We are looking at work
> of a variable rate.  No fast paced production assembly line work or work with a
> machine as setting the pace.  We're looking at end of day work goals, no strict
> hourly production requirements contemplating with moderate adaption.  Only
> occasional decision-making, only occasional changes in the work setting.

(Tr. 1675-1677).

Based on this hypothetical, VE Robinson testified that the hypothetical individual could

perform medium, unskilled occupations in the national economy, such as packager, with 100,000

jobs available; and inspector, also with 100,000 jobs available.  (Tr. 1677).  VE Robinson also

identified representative light, unskilled occupations in the national economy that plaintiff could

perform, such as garment sorter, with 120,000 jobs available, and packager, with 250,000 jobs

available; as well as unskilled, sedentary occupations such as sorter, with 100,000 jobs available, and table worker, with 100,000 jobs available. (*Id.*). VE Robinson testified that her responses were based on her professional training and experience, and that her job numbers were based on BLS data. (Tr. 1680-81).

Plaintiff's attorney cross-examined VE Robinson. (Tr. 1681-84). Plaintiff's attorney asked VE Robinson: (1) What is an employer's tolerance for a worker's inability to interact with a supervisor at the supervisor's appointed time? (A. Work preclusive). (2) Does a social interaction limitation to only familiar coworkers or supervisors equate to a competitive or an accommodated job? (A. Accommodated). (3) If "superficial" is defined to exclude normal interview process, learning the tasks that make up a job, going through a probationary period, and/or participating in evaluation, is this work preclusive? (A. Yes). (4) Did VE Robinson's identified job numbers include part-time or self-employment positions? (A. No). (5) Did VE Robinson derive her numbers for the specific DOT codes or larger occupational base; and if the latter, how did she derive her numbers based on hypothetical limitations? (A. Larger occupational base; but she reduced the numbers by 50%, which accounted for the limitations in the hypothetical). (Tr. 1681-84). Plaintiff's attorney did not specifically object to VE Robinson's responses or ask that the record be held open for that purpose.[7]

On January 31, 2023, plaintiff submitted a brief arguing that VE Robinson's testimony concerning job numbers was inconsistent with the DOT, the BLS, and companion publications. (Tr. 1812-91). In it, plaintiff argued that the "correct number of jobs" for each of the medium,

---

[7] ALJ Cromer did hold open the record for "updated record evidence with respect to the most recent hospitalization, the EEG." (Tr. 1684).

light, and sedentary exertion positions proffered by VE Robinson based on ALJ Cromer's first

hypothetical was zero. (Tr. 1812). Plaintiff attached to her memorandum approximately 80

pages of printouts from O*NET, BLS, and Occu Collect containing some circled information

without further elaboration. (Tr. 1813-91). The ALJ rejected this objection in her decision,

noting:

> First, the representative did not ask to leave the record open to file a brief at the
> hearing. The representative did not note objections to the vocational expert
> qualifications. The representative did not question the vocational expert at the time
> of the hearing regarding the more than 700,000 jobs listed in the national economy.
> The documents indicates [sic] the testimony is "so inaccurate" as to be incapable
> of being relied upon and significantly inconsistent with the DOT, and then provides
> 80 pages of DOT print outs, but does not make a substantive argument as to why
> the jobs given by the vocational expert would not fit within the RFC. Finally, the
> BLS data identified by the vocational expert is a known reliable source, and the
> vocational expert has significant experience in SSA proceedings.

(Tr. 1643-44).

The Court begins with the Commissioner's waiver argument. Numerous courts within

the Sixth Circuit have addressed cases with similar facts over the past several years, with many

finding that plaintiffs waive objections to vocational testimony if they are not raised at the

administrative hearing—notwithstanding the submission of post-hearing briefs.[8] *See Gross v.*

*Comm'r of Soc. Sec.*, No. 3:22-cv-229, 2022 WL 17717422, at *8 (N.D. Ohio Oct. 26, 2022)

("[T]he ALJ wasn't required to accept Gross's post-hearing brief about an alleged conflict

because Gross never objected to the vocational expert's testimony at the hearing or asked for

---

[8] The Commissioner cites two Sixth Circuit cases for the proposition that "a claimant's failure to object to testimony offered by a vocational expert at the time of the administrative hearing waives the claimant's right to raise such issues in the district court." (Doc. 9 at PAGEID 2466 (citing *O'Neal*, 799 F. App'x at 318, and *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)). Neither decision is precisely on point, however, as the claimants in those cases conducted no cross-examination at all and did not submit post-hearing but pre-ALJ decision briefs.

permission to file an objection."); *Vega v. Comm'r of Soc. Sec.*, No. 1:20-cv-01934, 2021 WL 6012038, at *8 (N.D. Ohio Dec. 3, 2021) ("Having not objected to the VE's testimony at the administrative hearing, and having failed to cross-examine the VE in a manner that adequately preserved Ms. Vega's objection as to whether the VE's testimony was consistent with the DOT, I conclude that Ms. Vega has waived her right to object to the VE's testimony" in a post-hearing brief) (report and recommendation), *adopted*, 2021 WL 6000037 (N.D. Ohio Dec. 20, 2021); *Murnahan v. Comm'r of Soc. Sec.*, No. 3:19-cv-01348, 2020 WL 7024847, at *6 (N.D. Ohio Nov. 30, 2020) ("[A]bsent any specific evidence to the contrary, such as when a claimant makes an on the record request at the hearing to hold the hearing open for post-hearing brief detailing his objection to the VE's testimony and the ALJ clearly agrees to so hold the record open, a claimant who fails to object at the hearing to the testimony of a VE waives the right to subsequently object to that testimony and an ALJ has no obligation to address unsolicited post-hearing objections to the VE testimony."); *Brown v. Comm'r of Soc. Sec.*, No. 3:22-cv-1258, 2023 WL 5765875, at *2 (N.D. Ohio Sept. 7, 2023) (quoting *Murnahan*); *Luna v. Soc. Sec. Admin.*, No. 1:19-cv-1414, 2020 WL 5549318, at *15 (N.D. Ohio Aug. 28, 2020) (finding no procedural error with the ALJ's lack of explanation for rejecting a post-hearing brief where the plaintiff "did not object to [the VE] offering her expert opinion" and "did not object to [the VE's] answers" to the plaintiff's cross examination) (report and recommendation), *adopted sub nom. Luna v. Comm'r of Soc. Sec.*, 2020 WL 5544379 (N.D. Ohio Sept. 15, 2020); *Zimmerman v. Comm'r of Soc. Sec.*, No. 1:18-cv-1233, 2019 WL 4736267, at *8 (N.D. Ohio Sept. 27, 2019) (Notwithstanding the plaintiff's post-hearing brief, "[t]he failure to object to evidence, or failure

20

to cross-examine a VE about a topic at the hearing, precludes the claimant from later raising the issue."); *Robberts v. Comm'r of Soc. Sec.*, No. 2:18-cv-541, 2019 WL 4023549, at *8 (S.D. Ohio Aug. 26, 2019) (finding a claimant's post-ALJ hearing objection waived where the issue was known to the attorney but not raised in cross-examination of the VE at the hearing); *Turner v. Comm'r of Soc. Sec.*, No. 2:19-cv-900, 2019 WL 5781608, at *7 (S.D. Ohio Nov. 5, 2019) (following *Robberts* and noting that "[d]espite cross-examining the VE, Plaintiff's counsel failed to challenge the VE's classification of Plaintiff's past work as an "Inspector and Hand Packager" or to alert the VE or ALJ that there was a possible inconsistency between the VE's testimony and the evidence in the record") (report and recommendation), *adopted*, 2020 WL 132269 (S.D. Ohio Jan. 13, 2020); *Jones v. Comm'r of Soc. Sec.*, No. 2:17-cv-1062, 2019 WL 2511111, at *9 (S.D. Ohio June 18, 2019) (Notwithstanding the submission of a post-hearing brief, "Plaintiff could have cross-examined the VE to elicit testimony as to her ability to perform the requirements of a packer, sorter or inspector, but did not.  Plaintiff has thus waived her challenge to the testimony.") (report and recommendation), *adopted*, 2019 WL 3082655 (S.D. Ohio July 12, 2019); *Kidd v. Berryhill*, No. 5:17-cv-420, 2018 WL 3040894, at *6-7 (E.D. Ky. June 19, 2018) (failure to object to a specific element of a VE's testimony at the time of the administrative proceeding, when the claimant "certainly could have" done so, waived the objection).[9]

---

[9] In *Adams v. Comm'r of Soc. Sec.*, No. 1:19-cv-01310, 2020 WL 13505362 (N.D. Ohio Dec. 11, 2020), the court held that the plaintiff was *not* required to raise the objection at the ALJ hearing before submitting the issue in a post-ALJ hearing brief. *Id.* at *4.  In that case, however, the plaintiff had asked the VE related questions on cross-examination, raised his intention to file a related post-hearing brief, and the ALJ approved of this submission on the record. *Id.*  Several of the cases discussed are not inconsistent with this conclusion—stating that the claimant's failure to request, and the ALJ's failure to explicitly permit, a post-hearing brief factored into their conclusions. *See, e.g.*, *Gross*, 2022 WL 17717422, at *8; *Murnahan*, 2020 WL 7024847, at *6.

In addition, in both *Fitzmaurice v. Comm'r of Soc. Sec.*, No. 1:20-2745, 2021 WL 6052163 (N.D. Ohio Dec. 21, 2021), and *Patterson v. Saul*, No. 3:18-cv-0641, 2019 WL 4237854 (M.D. Tenn. Aug. 2, 2019) (report and recommendation), *adopted sub nom. Patterson v. Soc. Sec. Admin.*, 2019 WL 4237855 (M.D. Tenn. Aug. 23, 2019), the plaintiffs submitted pre-hearing briefs similar to that submitted here (*see* Tr. 1807), raising the possibility of a vocational-related objection. *See Fitzmaurice*, 2021 WL 6052163, at *6 n.4; *Patterson*, 2019 WL 4237854, at *4. The courts found that neither the pre-hearing brief nor the unsolicited post-hearing brief saved the vocational issues from waiver. *Fitzmaurice*, 2021 WL 6052163, at *6 & n.4; *Patterson*, 2019 WL 4237854, at *9.

Other courts have reached the opposite conclusion. *See Westmoreland v. Berryhill*, No. 3:17-cv-00096, 2018 WL 1522118, at *3 (S.D. Ohio Mar. 28, 2018) (the plaintiff did not waive vocational argument raised in a post-hearing brief submitted before the ALJ issued her decision); *Burton v. Berryhill*, No. 3:18-cv-56, 2019 WL 1585116, at *6-7 (W.D. Ky. April 12, 2019) (discussing seven cases in the Western District of Kentucky holding that vocational objections were not waived, though not addressed at the administrative hearing, because it would be impractical and unreasonable to require such objections) ("[D]ue to the thousands of vocational descriptions in the DOT and the lack of prior notice regarding which three would be identified during the hearing—the plaintiffs in these seven cases would not have been familiar enough with the information to effectively cross-examine the vocational expert about obsolescence of the DOT descriptions 'on the fly.'").

The Court finds the first line of cases more persuasive.  In plaintiff's statement of errors, she cites *Biestek v. Berryhill* for the proposition that "an applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions."  (Doc. 8 at PAGEID 2443 (quoting *Biestek*, 139 S. Ct. at 1156)).  Plaintiff omits, however, the beginning of the quoted sentence: "*Even without specific data*, an applicant may probe the strength of testimony. . . ."  *Biestek*, 139 S. Ct. at 1156 (emphasis added).  If anything, this appears to lend support to the Commissioner's position.  Plaintiff's counsel's cross-examination of VE Robinson gestures at the social interaction limitations in the administrative record and how VE Robinson arrived at her job numbers.  Yet plaintiff's counsel did not object to these answers or ask ALJ Cromer to hold the record open for the purpose of making such objections.  Under these circumstances, the Court finds that plaintiff waived the vocational objections raised in her post-hearing brief.

Even if plaintiff's vocational objections were not waived, however, the Court finds that they are without merit.  Plaintiff argues that ALJ Cromer failed "to both recognize and address" inconsistencies between VE Robinson's testimony and the data presented in her post-hearing brief.  (Doc. 8 at PAGEID 2444-45).  Plaintiff cites Social Security Ruling (SSR) 00-4p[10] for the proposition that ALJ Cromer was required to explicitly resolve the conflict between VE Robinson's testimony and the numbers presented in plaintiff's post-hearing brief in the written

---

[10] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010 (quoting 20 C.R.F. § 402.35(b)(1)).

decision, and argues that ALJ Cromer's cursory treatment of the post-hearing brief was

insufficient.

As explained in *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462 (6th Cir. 2017),

however:

> [A]n ALJ has an affirmative duty to inquire as to whether a vocational expert's evidence *conflicts with the information provided in the DOT*, and to resolve any "apparent conflicts." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). We have found it sufficient to satisfy this duty where the ALJ asks the vocational expert if there is a conflict. *See Martin v. Comm'r of Soc. Sec.*, 170 F[. App'x] 369, 374 (6th Cir. 2006).

*Id.* at 468 (emphasis added). Here, at the outset of VE Robinson's testimony, ALJ

Cromer asked her to advise "[i]f at any time" she were to "give an opinion which

conflicts with the information contained in the Dictionary of Occupational Titles of the

SCO. . . ." (Tr. 1675).[11] ALJ Cromer later asked VE Robinson what she relied upon for

any answers that required information beyond the DOT or SCO, and VE Robinson stated

she relied on her education and experience. (Tr. 1680). Finally, ALJ Cromer confirmed

that VE Robinson's job numbers were based on the BLS. (Tr. 1681). The Court finds

that these questions satisfied ALJ Cromer's duty to inquire as set forth in SSR 00-4p.

*O'Neal*, 799 F. App'x at 318 (quoting *Martin*, 170 F. App'x at 374) ("The ALJ satisfied

this requirement when she asked the vocational expert whether her testimony aligned

with the DOT. Contrary to O'Neal's suggestion, the ALJ was under no duty 'to conduct

---

[11] The fact that ALJ Cromer asked this question prior to VE Robinson's testimony is irrelevant. *See Gross*, 2022 WL 17717422, at *7 (quoting *Mitchell v. Comm'r of Soc. Sec.*, 2019 WL 1521996, at *3 (E.D. Mich. Mar. 7, 2019) (collecting cases) (report and recommendation), *adopted*, 2019 WL 1516058 (E.D. Mich. Apr. 8, 2019))) ("[I]t is not error for an ALJ to inquire whether a VE's testimony would conflict with the DOT *before* the VE's substantive testimony.").

an independent investigation' into the vocational expert's testimony to determine whether it was correct.").

The question then becomes whether the post-hearing brief raises an apparent conflict between the DOT information and VE Robinson's testimony. It does not. While plaintiff's post-hearing brief states that VE Robinson's testimony was "not consistent with the DOT or BLS data" (Tr. 1812), plaintiff failed to support this conclusion with a substantive explanation. Instead, plaintiff merely appended dozens of pages of Occu Collect and O*NET printouts with various portions circled. (Tr. 1813-91).[12] While plaintiff fleshes out her arguments in the brief before this Court, she did not make these arguments in her post-hearing brief before the ALJ.[13]

Barring any apparent conflict between VE Robinson's testimony and the DOT, the Court's last consideration is whether ALJ Cromer's relatively short discussion and rejection of plaintiff's post-hearing argument demonstrates that her decision to credit VE Robinson's testimony as persuasive is based on substantial evidence. It does. "[W]here there is no direct

---

[12] The DOT is a reliable source of job information. *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020) (citing 20 C.F.R. § 404.1566(d)(1)). *See also* SSR 00-4p, 2000 WL 1898704, at *2 ("The regulations at 20 CFR 404.1566(d) and 416.966(d) provide that we will take administrative notice of 'reliable job information' available from various publications, including the DOT. In addition, as provided in 20 CFR 404.1566(e) and 416.966(e), we use VEs and VSs as sources of occupational evidence in certain cases."). O*NET data is not necessarily reliable: "[I]n 2010, the SSA determined that O*NET in its current form was not suitable for disability claims adjudication. *See* Occupational Infor. Dev. Advisory Panel, *Findings Report: A Review of the National Academy of Sciences Report*, Report to the Comm'r of Soc. Sec. 1, 8 (June 28, 2010), https://www.ssa.gov/oidap/Documents/COMPLETE%20FINAL-Findings%20Report%20OIDAP%20062810.pdf." *O'Neal*, 799 F. App'x at 317.

[13] The Court distinguishes this conclusion from the Court's conclusion in *Jackson v. Comm'r of Soc. Sec.*, No. 2:14-cv-988, 2015 WL 3470190, (S.D. Ohio June 1, 2015). In *Jackson*, the plaintiff submitted a post-hearing brief detailing the fact that two of the three jobs provided as examples by the VE required "frequent" and "constant" reaching under the DOT, but the ALJ had limited the plaintiff to only "occasional" reaching. *Id.* at *2. Waiver of vocational arguments was not at issue in this case. The Court in *Jackson* properly identified this as a direct conflict between the VE's testimony and the DOT and held that the ALJ was required to explicitly explain his resolution of the conflict. *Id.* at *4.

conflict between the DOT and the testimony of the VE requiring an ALJ to explain how that conflict was resolved, there is no heightened standard of articulation for an ALJ to meet when considering post-hearing criticisms/concerns about the VE's testimony." *Murnahan*, 2020 WL 7024847, at *6. *See also Luna*, 2020 WL 5549318, at *16 (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)) ("The ALJ was required to consider the opinion, but nothing more."). *Cf. Fitzmaurice*, 2021 WL 6052163, at *9 (quoting *Herndon v. Comm'r of Soc. Sec.*, 2021 WL 811660, at *25 (N.D. Ohio March 3, 2021)) ("[T]here is no requirement that the ALJ resolve conflicts between vocational evidence provided by either state agency employees or by other VEs.") (alteration in original). It is clear from the ALJ's decision that she considered plaintiff's post-hearing objection, and she provided various reasons for rejecting it. (Tr. 1643-44).

In sum, the Court finds that plaintiff waived her ability to raise a vocational argument by failing to object to VE Robinson's qualifications or testimony or specifically request that ALJ Cromer hold the record open for purposes of an objection related to her cross-examination of VE Robinson. Even if the Court were to consider its merits, the Court finds that plaintiff's post-hearing objection did not raise a direct conflict between VE Robinson's testimony and the DOT. As such, ALJ Cromer was under no heightened articulation burden, and her decision to credit VE Robinson's testimony over the information presented in the post-hearing brief is based on substantial evidence.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's Statement of Specific Errors (Doc. 8) be **OVERRULED**, the Commissioner's

non-disability finding be **AFFIRMED**, and this case be closed on the docket of the Court.

Date: 4/22/2024

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

AALIJAH W.,                                    Case No. 2:23-cv-1955
      Plaintiff,                            Watson, J.
                                                Litkovitz, M.J.
vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

28